UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

FRANK LoCASCIO,
Reg. No. 36746-053                                    Docket No.
FMC Devens
Post Office Box 879
Ayer, Massachusetts 01432


        Plaintiff

   vs.

FEDERAL BUREAU OF INVESTIGATION
U.S. DEPARTMENT OF JUSTICE
935 Pennsylvania Avenue, NW
Washington, DC 20535

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

        Defendants
_____

## PRELIMINARY STATEMENT

1.    This is an action under the Freedom of Information Act ("FOIA") , 5 U.S.C. § 552 et seq.,

for injunctive and other appropriate relief, and seeking the immediate processing and release

of agency records requested by plaintiffs from defendant Federal Bureau of Investigation.

## JURISDICTION AND VENUE

2.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over

the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This court also has jurisdiction over this

action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. §

552(a)(4)(B).

## PARTIES

3.   Plaintiff Frank LoCascio is a natural person currently incarcerated at the Federal Medical

Center, Devens, Massachusetts.

4.   Defendant Federal Bureau of Investigation (FBI) is a division of the Department of Justice

(DOJ).   DOJ is a Department of the Executive Branch of the United States Government,

which includes component entities such as the Federal Bureau of Investigation (FBI), United

States Marshals Service (USMS), the Drug Enforcement Administration (DEA) and the

Department of Homeland Security (DHS).   As a component entity of the DOJ, the FBI is an

agency within the meaning of 5 U.S.C. § 552(f).

### THE GOVERNMENT'S ACQUISITION OF THE TAPE RECORDINGS OF OF NOVEMBER 30, 1989, AND DECEMBER 12, 1989, AND THE UNDERLYING CRIMINAL CHARGES AND TRIAL

5.   Pursuant to a Title III authorized warrant, during the latter part of 1989, the FBI placed

recording devices in an apartment over the Ravinite Social Club in New York, New York,

intending to capture conversations between John Gotti and other alleged members of the

Gambino Crime Family.

6.   Duplicate originals were simultaneously made at the times the recordings were made.

7.   Portions of many tapes were deemed "inaudible," or I/A in transcripts.

8.   Especially significant to Frank LoCascio, the Plaintiff herein, who stood trial with John Gotti

in *U.S. v. Gotti*, 90 cr 1051 (E.D.N.Y.),were recordings made on December 12, 1989, in

which a discussion was held concerning Gotti's intention to murder Louis DiBono.

9.   It was Plaintiff's contention that he opposed the murder of Louis DiBono, but portions of

LoCascio's statements at the December 12, 1989, meeting were deemed "inaudible."

10.     Gotti and Frank LoCascio, the Plaintiff herein, were both convicted of conspiring to kill Louis DiBono.

11.     DiBono and Gotti met at the Ravenite Social Club on March 28, 1990, in a meeting also recorded by the FBI.

12.     The March 28, 1990, meeting between Gotti and DiBono, at the Ravenite Social Club, was not attended by LoCascio.

13.     DiBono was killed in the parking garage beneath the former World Trade Center in New York in October of 1990, some ten (10) months after the meeting at the Ravenite Social Club, at which Gotti discussed killing DiBono, and some seven (7) months after meeting with Gotti and resuming a business relationship with Gotti.

14.     Gotti and LoCascio were both convicted of killing DiBono.[1]

15.     Frank LoCascio, along with John Gotti, stood trial for six weeks, beginning in February 1992, on charges of substantive and conspiracy RICO violations of 18 U.S.C. § 1962(c) and (d), and a number of predicate acts charged as separate counts.  *See United States v. Gotti, et. al.*, 90-cr-01051 (ILG) in the Eastern District of New York.

16.     LoCascio was convicted of all counts except for those relating to an alleged gambling enterprise in New York.

PLAINTIFF'S FOIA REQUESTS AND DEFENDANTS' RESPONSES

17.     After learning that newer technologies could allow the "inaudible" portions of the recordings to be more fully deciphered, Plaintiff began seeking the tape recordings from the government

---

[1]     It was the only murder of which Plaintiff was charged with, and is the reason he is serving a life sentence. Without that conviction, Plaintiff could have been sentenced to no more than 20 years incarceration. He has been incarcerated for almost 25 years.

in order to avail himself of the new technologies and prove his innocence of the DiBono murder.

18.    It is Plaintiff's desire to analyze the November 30, 1989 and December 12, 1989, recordings using newer techniques.

19.    On August 25, 2014, through Attorney Ernest Louis Nargi, Plaintiff wrote the FOIA Section Chief Hardy at the FBI Record/Information Dissemination Section, at 170 Marcel Drive, Winchester, Virginia, requesting 644 audio reels of recorded conversations from near and above The Ravenite Social Club in New York County, as docketed in the Eastern District of New York on January 18, 1991, in the matter of *United States v. Gotti*, docketed at 90-cr-01501, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the accompanying rules, 28 C.F.R. § 16.1 *et seq (Subpart A)*.   That letter is attached as Exhibit A.

20.    The August 25, 2014, letter noted that the reels had been played in open court, and should therefore be disclosed under *Cattone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999).

21.    The August 25, 2014, letter specifically requested the recordings made on November 30, 1989, and December 12, 1989, which were also under FBU file numbers 183A-3507, SNY 2005.

22.    The August 25, 3014, letter also requested that the request be expedited.

23.    On August 27, 2014, David M. Hardy, FOIA Section Chief, wrote Attorney Nargi acknowledging receipt of the FOIA request, and assigned it FOPA Request No. 1293293-000.  See Exhibit B.

## THE ADVERSE DETERMINATION

24.     On November 18, 2014, Section Chief Hardy wrote to Attorney Nargi denying the FOIA

request under 5 U.S.C. § 552(b)(7)(A), which exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement records
> or information ... could reasonably be expected to interfere with
> enforcement proceedings ...

See Exhibit C.

## THE APPEAL

25.     Attorney Nargi appealed the determination of Section Chief Hardy, by letter to the Director

of Office Information Policy at the U.S. Department of Justice., dated January 8, 2015.  See

Exhibit D.

26.     Attorney Nargi's January 8, 2015, appeal letter set forth first tht the requested audio reels

were played in open court requiring that they be released pursuant to *Cattone v. Reno*, 193

D.3d 550 (D. C. Cir 1999).  Nargi further specifically identified the audio reels plad in open

court that he requested as FBI file numbers 183A-3507, SNY 2005.

27.     Nargi went on to state that even if the audio reels ere law enforcement records, that they were

played in open court at a public trial defeats the exemption.

28.     Nargi moreover stated that it stretched the furthermost bounds of credulity to suggest that

these 25 year old recordings were part of an ongoing or prospective law enforcement

proceeding, as all persons in them were either dead or serving lengthy or life sentences of

incarceration.  Thus, Nargi argued, the arguments advanced by the FBI for denying disclosure

failed both prongs of the 7(a) exemption.

29.    Nargi went on to note that the analysis of these recordings with technology not dreamed of at the time of trial may prove Mr. LoCascio's actual innocence, and the continued withholding of them therefore resulted in a substantial deprivation of due process.

30.    On January 29, 2015, Priscilla Jones, Supervisory Administrative Specialist at the U.S. Department of Justice Office of Information Policy, wrote Attorney Nargi acknowledging receipt of the administrative appeal, and assiging it number AP-2015-01595.  See Exhibit E.

THE ADVERSE DETERMINATION OF THE APPEAL

31.    By letter dated April 14, 2015, Sean R. O'Neill, Chief of the Administrative Appeals staff, affirmed the FBI's action denying the FOIA requst.

32.    The appeal was specifically denied under 5 U.S.C. § 552(b)(7)(A)

CAUSES OF ACTION

FIRST CAUSE OF ACTION:

VIOLATION OF THE FOIA FOR FAILURE TO MAKE AVAILABLE<br>THE RECORDS SOUGHT BY PLAINTIFFS' REQUEST

33.    Plaintiffs repeat and reallege paragraphs 1-32. and incorporate them by reference as though fully set forth herein.

34.    Defendants' failure to make promptly available the records sought by plaintiffs' request violates the FOIA.

35.    The idea that these 26 year old recordings somehow relate to any ongoing investigation is ludicrous, in light of the fact that everyone on that recording has been prosecuted and at this moment in time is either deceased or incarcerated.

36.    There is no risk that law enforcement techniques would be revealed.  As set forth by the government during the Plaintiff's trial, the recordings were made by installing a "bug" in the apartment above the Ravenite Social Club.  And the idea that this 26 year old technique is somehow a great secret is absurd.

37.    There is no risk that any targets of the investigation that produced these recordings will be alerted to the fact that they are targets of this investigation.  All of the targets were fully alerted of their status as targets when they were indicted and prosecuted, and the recordings were played in open court.

38.    Moreover, the recordings requested, and transcripts of them, are publicly available to anyone who wants to look for them.

39.    The December 12, 1989, recording can be accessed through the following link: https://www.youtube.com/watch?v=otovo2zsKOE .

40.    At 20:20, 36:30 and at 36:55 of that recording, Gotti talks about  Louis Di Bono.  At 38:09 of that same publicly available recording, Salvatore "Sammy Bull" Gravano seeks permision to kill DiBono.

41.    The specific portion recording sought concerning LoCascio's conversation with Gotti about Gotti's intention to kill DiBono, is also on YouTube.com, beginning at 38:52 of https://www.youtube.com/watch?v=Glc8ULNSKss

42.    The same recording from December 12, 1989, at which the murder of DiBono is discussed can also be accessed by any member of the public at 8:20 of the following YouTube.com entry: https://www.youtube.com/watch?v=votB9qiI6bo.

43. The transcript of the December 12, 1989, recording, as introduced into evidence at trial, can be accessed through books and electronic books (e-books) of the recordings from the Ravenite Social Club.  These are available through Barnes and Noble, and other sources.  See Exhibit G.

44. The specific transcript of the December 12, 1989, including the portion sought through the Freedom of Information request can be readily obtained through the following web link: https://books.google.com/books?id=V0CfjAsrMBQC&pg=PT55&lpg=PT55&dq=ravenite++social+club+december+12,+1989&source=bl&ots=7hMO5mmYbA&sig=A1dFPWxkFfLcSIuv5Yx9v0MEIcU&hl=en&sa=X&ved=0CB4Q6AEwAWoVChMI083BpePkxwIVhXQ-Ch1teQj0#v=onepage&q=ravenite%20%20social%20club%20december%2012%2C%201989&f=false.

45. Thus, there is no justification for denying LoCascio access to the reels under either ground set forth by the F.B.I. or the Department of Justice.

46. There is no law enforcement purpose for denying access to the actual reels.

47. Disclosure or dissemination of these reels cannot possibly interfere with an ongoing investigation, nor will release of these recordings alert any party that s/he is a target of the recordings.  The indictment, prosecution and life sentences handed down after the recordings were played in open court fully apprised the targets that they were, in fact, targets.

48. The release of these 26 year old recordings, moreover, will not alert anyone to law enforcement techniques.  The techniques used at the time are not completely obsolete.

49. The defendants have engaged in unreasonable tactics in order to avoid producing the requested reels.

50.     Defendants have acted in bad faith by claiming that the recordings are exempt from disclosure under the law enforcement exception to the Freedom of Information Act.

51.     Defendants actions are in bad faith, and violate the Freedom of Information Act 5 U.S.C. § 552 (a) (3) (A) .

52.     Moreover, any purported "sealing" of these recordings is an illusion.

REQUESTED RELIEF

WHEREFORE, plaintiffs pray that this Court:

A.      Order that the Defendants immediately and expeditiously provide to the Plaintiff all audio reels requested, especially the November 30, 1989, and December 12, 1989, recordings.

B.      Award plaintiffs their costs and reasonable attorneys fees incurred in this action; and

C.      Grant such other relief as the Court may deem just and proper.


                                                    Respectfully submitted

Dated: September 8, 2015

                                                    _____
                                                    Ruth M. Liebesman, Esquire (RL 5383)
                                                    36 Farview Terrace
                                                    Paramus, New Jersey 07652
                                                    201-617-7000
                                                    201-617-7710 (facsimile)
                                                    LiebesmanEsquire@aol.com